**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

JAMES F.,

   *Plaintiff,*

v.

COMMISSIONER OF SOCIAL
SECURITY,

   *Defendant.*

_____/

Case No. 1:26-cv-10137

Patricia T. Morris
United States Magistrate Judge

**MEMORANDUM OPINION AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)**

## I. CONCLUSION

For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 10) is **DENIED**, the Commissioner of Social Security's motion for summary judgment (ECF No. 12) is **GRANTED**, and the decision of the administrative law judge (ALJ) is **AFFIRMED**.

## II. ANALYSIS

### A. Introduction and Procedural History

On September 27, 2023, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging he became disabled on April 23, 2023.  (ECF No. 7-1, PageID.40).  The Commissioner initially denied the

application on May 29, 2024, and on reconsideration on August 29, 2024.  (*Id.*).

Plaintiff then requested a hearing before an ALJ, which was held on March 7, 2025.

(*Id.*).  The ALJ issued a written decision on April 14, 2025, finding Plaintiff was not

disabled.  (*Id.* at PageID.40–49).  Following the ALJ's decision, Plaintiff requested

review from the Appeals Council, which denied the request on November 19, 2025.

(*Id.* at PageID.24–26).

Following the Appeals Council's denial of review, Plaintiff sought judicial

review on January 14, 2026. (ECF No. 1).  The parties consented to the Undersigned

"conducting any or all proceedings in this case, including entry of a final judgment

and all post-judgment matters."  (ECF No. 9).  The parties have since filed cross-

motions for summary judgment for which briefing is complete.  (ECF Nos. 10, 12,

13).

**B.      Standard of Review**

District courts have jurisdiction to review the Commissioner's final

administrative decisions pursuant to 42 U.S.C. § 405(g).  The review is restricted

solely to determining whether "the Commissioner has failed to apply the correct

legal standards or has made findings of fact unsupported by substantial evidence in

the record."  *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014)

(citation modified).  Substantial evidence is "more than a scintilla of evidence but

less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th

Cir. 2007) (citation modified).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation modified).

A district court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  Courts will "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Id.* (citation modified).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability."  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

(i) At the first step, [the ALJ] consider[s] [the claimant's] work activity, if any.  If [the claimant is] doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.

(ii) At the second step, [the ALJ] consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled.

(iii) At the third step, [the ALJ] also consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant has] an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement, [the ALJ] will find that [the claimant is] disabled.

(iv) At the fourth step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . past relevant work. If [the claimant] can still do . . . past relevant work, [the ALJ] will find that [the claimant is] not disabled.

(v) At the fifth and last step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work.  If [the claimant] can make an adjustment to other work, [the ALJ] will find that [the claimant is] not disabled.  If [the claimant] cannot make an adjustment to other work, [the ALJ] will find that [the claimant is] disabled.

20 C.F.R. § 404.1520(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence

4

and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing his or her residual functional capacity (RFC), which "is the most [the claimant] can still do despite [his or her] limitations," and is assessed using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ determined Plaintiff was not disabled. (ECF No. 6-1, PageID.49). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 23, 2023, the alleged onset date. (*Id.* at PageID.42). At step two, the ALJ found the following severe impairments: residual effects from bacterial meningitis with encephalopathy and

5

cerebrovascular accidents requiring intracranial pressure monitoring; lumbar spondylosis with a mild compression deformity and arthritic changes; obesity. (*Id.* at PageID.43).

At step three, the ALJ found none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing. (*Id.* at PageID.44).

Next, the ALJ found Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations. The claimant can climb ramps and stairs occasionally, and climb ladders, ropes, or scaffolds occasionally. The claimant can balance frequently, but only occasionally stoop, kneel, crouch, and crawl.

(*Id.*).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.47–48). However, at step five, the ALJ found other jobs in the national economy that Plaintiff could perform. (*Id.* at PageID.48). Specifically, the ALJ found Plaintiff could perform the requirements of a mail room clerk (106,000 jobs in the national economy), a packer (100,000), and an inspector (201,000). (*Id.* at PageID.48–49). The ALJ thus concluded Plaintiff was "not disabled." (*Id.* at PageID.49).

### E.   Administrative Record

Plaintiff raises three issues on appeal. First, Plaintiff argues the ALJ's RFC

is unsupported by substantial evidence.  Second, Plaintiff argues the ALJ failed to properly consider his subjective allegations of symptoms.  Third, Plaintiff argues in the alternative that the matter should be remanded for the ALJ to consider new, material evidence.  While the Court has reviewed the entire record, it will only summarize the evidence relevant to Plaintiff's issues on appeal.

Plaintiff was hospitalized due to bacterial meningitis with sepsis and encephalopathy requiring mechanical ventilation and intracranial pressure monitoring from May 11 through May 22, 2023.  (ECF No. 7-1, PageID.329, 331).  On May 20, Plaintiff's treating physician noted an "overall significant improvement in weakness and encephalopathy," resolved respiratory failure, and no acute distress.  (*Id.* at PageID.367).  At that time, the physical therapist felt he would "likely benefit from inpatient rehab" due to "increased weakness, decreased level of assistance at home, difficulty walking, unsteady gait, gait deviations, increased risk of falls, and recent change in prior level of function."  (*Id.*).  Nevertheless, Plaintiff was released two days later "[m]edically stable for discharge with home care," medications, and a referral for physical and occupational therapy for the rehab services to evaluate and treat at their discretion as to frequency and duration.  (*Id.* at PageID.330–31).

At his occupational therapy evaluation a few days after discharge, Plaintiff presented with full strength and motor control in his upper extremities with only mild weakness in his right grip which was still functional for all activities of daily

living.  (*Id.* at PageID.1059).  A mini cognitive screen showed a possible mild cognitive deficit in executive function, fluency, and delayed recall but there were no functional deficits that occupational therapy needed to address.  (*Id.*).

At a follow-up appointment a week after discharge, Plaintiff reported "doing very well" and that he no longer qualified for physical and occupational therapy because he was doing so well.  (*Id.* at PageID.915).  The "only thing that [was] not back to normal" was his memory, specifically his recall of acquaintances' names.  (*Id.*).  His breath sounded clear, his extremities were normal, and he was alert and oriented with no focal deficits noted.  (*Id.*).  The next day, May 31, Plaintiff followed-up with his primary care physician.  He reported doing well and no longer requiring occupational or physical therapy but that he had some generalized weakness.  (*Id.* at PageID.1005).  He also reported that he was still going to speech therapy although the doctor noted that he "did not notice that his speech was off notably at all."  (*Id.*).  Nevertheless, Plaintiff reported "no acute concerns or complaints" and stated he was "feeling better every day."  (*Id.*).  His physical exam was normal, showing normal ambulation, full range of motion, and full strength.  (*Id.*).

In June, Plaintiff went to his primary care physician complaining of upper right abdomen pain and some numbness in his left forearm that felt superficial.  (*Id.* at PageID.1016).  There was no change in sensation in his fingers or a mobility

8

deficit.  (*Id.*).  His other systems were all normal upon exam.  (*Id.* at PageID.1016–17).  His physician opined the numbness did "seem superficial" with no muscular, skeletal, or vascular deficits and normal circulatory status.  (*Id.* at PageID.1017).  He was instructed to monitor for any change.  (*Id.*).

At Plaintiff's yearly physical in July 2023, he reported that he had "recovered well from his recent episode of spinal meningitis . . . .  He does not feel he has any deficit as of yet."  (*Id.* at PageID.1010).  He did not report any complaints of ear pain, joint or muscular pain or weakness, paresthesia, headache, or sleeping problems.  (*Id.* at PageID.1011).  His physical exam remained normal in all areas.  (*Id.*).

At a hospital follow up in August, Plaintiff noted he was doing fairly well since discharge but "notices some left arm numbness and left calf numbness."  (*Id.* at PageID.775).  Nevertheless, he denied any ongoing weakness or pain.  (*Id.*).  Upon exam, the sensation in his left arm below the elbow was decreased.  (*Id.* at PageID.777).  The doctor suspected the numbness was due to the placement of the cranial pressure monitor during hospitalization.  (*Id.* at PageID.778).

A June 2023 MRI of Plaintiff's brain showed interval improvement in his condition from meningitis.  (*Id.* at PageID.835).  A July MRI showed continued "significant improvement" without fully resolving the changes from his hospitalization.  (*Id.* at PageID.819, 821–22).  A September MRI showed further

improvement from his hospitalization with a recommendation to follow-up in three months.  (*Id.* at PageID.815).  A December MRI showed no acute intracranial abnormality, but there was evidence of sinusitis for which he was recommended to see his primary care physician if he experienced symptoms.  (*Id.* at PageID.807, 810).

Plaintiff went to his physician complaining of right ear drainage and discomfort in December 2023.  (*Id.* at PageID.1032).  He had no other symptoms, and his physical exam showed no abnormalities except for a "slight amount of drainage" in his right ear.  (*Id.*).  He was prescribed ear drops and advised to take Tylenol as needed, rest, and drink plenty of fluids.  (*Id.*).  At a follow up in January 2024, Plaintiff complained that his left ear was now worse than the right and that his hearing was diminished.  (*Id.* at PageID.1036).  He was prescribed an antibiotic.  (*Id.* at PageID.1037).  The next week, his ears were a little better but still not good; he felt he had been having problems with them for the past five years with diminished hearing.  (*Id.* at PageID.1041).  Plaintiff was referred to an ENT and continued on the antibiotic and a nasal spray.  (*Id.* at PageID.1042).  February, March, and June 2024 hearing tests showed mixed hearing loss, bilaterally.  (*Id.* at PageID.1046, 1048, 1050).  He was recommended to get amplification, "if interested."  (*Id.* at PageID.1047, 1049).  Plaintiff also had a tube placed in his right ear which improved his aural fullness and he retained 100% word discrimination bilaterally.  (*Id.* at

10

PageID.1053–54).

Plaintiff had no complaints or concerns at his July 2024 physical and stated he felt well. (*Id.* at PageID.2569). Plaintiff reported no symptoms and had a normal physical exam. (*Id.* at PageID.2569–72). Further facts will be discussed below as necessary.

### F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources. An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed psychologist, which includes:

  (i) A licensed or certified psychologist at the independent practice level; or

  (ii) A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

11

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only. For this source, *qualified* means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language Pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only . . . ;

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice . . . .

20 C.F.R. § 404.1502(a) (2021). A medical source is

> an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d). In contrast, a nonmedical source is "a source of evidence who is not a medical source." *Id.* § 404.1502(e). "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and

12

daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id.*

The Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* § 404.1520c(a). "The most important factors [the SSA] consider[s] when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.* § 404.1520c(c).

The first factor is "supportability." For this factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative

13

medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with the claimant." *Id*. § 404.1520c(c)(3).  This factor includes analysis of:

(i)    Length of the treatment relationship.  The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii)    Frequency of examinations.  The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii)    Purpose of the treatment relationship.  The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv)    Extent of the treatment relationship.  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)    Examining relationship.  A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder.

*Id.*

The fourth factor of the SSA's analysis is "specialization."  In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to

become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

*Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(5). Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement,

[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case

record.   Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

*Id.* § 404.1520c(b)(1).   The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually."  *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2).  As such, the SSA

will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision.  [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she]

16

considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3).  The regulations clarify that the SSA is "not required to articulate how [it] considered evidence from nonmedical sources using the requirements of paragraphs (a)–(c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c).  The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities"; "[d]isability examiner findings," meaning "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [the claimant is] disabled"; and "[s]tatements on issues reserved to the Commissioner[,]" including

(i)  Statements that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work;

(ii)  Statements about whether or not [the claimant has] a severe impairment(s);

(iii)  Statements about whether or not [the claimant's] impairment(s) meet the duration requirement . . . ;

(iv)  Statements about whether or not [the claimant's] impairment(s)

17

meets or medically equals any listing in the Listing of Impairments . . . ;

(v)     Statements about what [the claimant's] residual functional capacity is using [the SSA's] programmatic terms about the functional exertional levels . . . instead of descriptions about [the claimant's] functional abilities and limitations . . . ;

(vi)    Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work . . . ;

(vii)   Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule . . . ; and

(viii)  Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review.

*Id.* § 404.1520b(c)(3).

The regulations also provide that

[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504. Therefore, the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.* The SSA will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim . . . ."

18

*Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." *Id.* § 404.1502(g). Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," which "include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain:

> In determining whether [the claimant is] disabled, [the SSA will] consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The SSA] will

19

> consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work.

*Id.* § 404.1529(a). But the SSA clarified that

> statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.* Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]." *Id.* The SSA will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it]

20

will carefully consider any other information [the claimant] may submit about [his or her] symptoms." *Id.* § 404.1529(c)(3).  This other information may include "[t]he information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or aggravate [the claimant's] symptoms, what medications, treatments or other methods [the claimant uses] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living," which "is also an important indicator of the intensity and persistence of [the claimant's] symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons.

*Id.*  Factors relevant to a claimant's symptoms, such as pain, include:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . .

pain or other symptoms;

(vi)   Any measures . . . used to relieve . . . pain or other symptoms.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get benefits, [the claimant] must follow treatment prescribed by [his or her] medical source(s) if this treatment is expected to restore [his or her] ability to work." *Id.* § 404.1530(a). Stated differently, "[i]f [the claimant does] not follow the prescribed treatment without a good reason, [the SSA] will not find [the claimant] disabled or, if [the claimant is] already receiving benefits, [the SSA] will stop paying . . . benefits." *Id.* § 404.1530(b). Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)   The specific medical treatment is contrary to the established teaching and tenets of [the claimant's] religion;

(2)   The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)   Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)   The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for [the claimant]; or

(5)   The treatment involves amputation of an extremity, or a major part of an extremity.

*Id.* § 404.1530(c).

### G.    Argument and Analysis

As stated above, Plaintiff raises three issues on appeal.  First, Plaintiff argues the ALJ's RFC is unsupported by substantial evidence.  Second, Plaintiff argues the ALJ failed to properly consider his subjective allegations of symptoms.  Third, Plaintiff argues in the alternative that the matter should be remanded for the ALJ to consider new, material evidence.

### 1.    Substantial Evidence

Plaintiff argues that the RFC is not supported by substantial evidence.  (ECF No. 10, PageID.2611).  Specifically, he argues that although the ALJ acknowledged severe residual effects from meningitis, the RFC understated the gravity and persistence of these effects.  Plaintiff first recounts his hospitalization in May 2023 for bacterial meningitis, which required intubation and intracranial pressure monitoring.  (*Id.*).  He then stresses that the physical therapist believed, two days before discharge, that he would benefit from inpatient rehabilitation.  (*Id.* at PageID.2612).  He argues that "assessment is directly relevant to work capacity, yet the decision effectively bypassed it in favor of later notations that Plaintiff was doing better."  (*Id.*; *see also id.* at PageID.2603 ("This discharge evidence is especially significant because it documents ongoing functional deficits at the close of the acute hospitalization rather than a full return to baseline.")).

23

But Plaintiff seems to ignore that the ALJ considered the evidence from his hospitalization and subsequent follow-ups showing that he indeed "rapidly recovered"—even if he was not yet back to baseline upon discharge. (ECF No. 7-1, PageID.46). True, two days prior to discharge (and only three days after getting off a ventilator) the physical therapist thought Plaintiff would benefit from inpatient rehabilitation due to weakness, unsteady gait, increased risk of falls, etc. (*Id.* at PageID.367). But Plaintiff was discharged home two days later in stable condition with a referral to physical and occupational therapy. (*Id.* at PageID.330–32). Within a week, Plaintiff was "doing very well" and no longer qualified for physical or occupational therapy "because [he was] doing so well." (*Id.* at PageID.915, 1059). The only thing which was not back to normal was his memory of names of people he knows not including close family. (*Id.*). The ALJ properly considered and weighed this evidence and found that his condition shortly before discharge did not show long-term restrictions necessary to include in his RFC.

Plaintiff next argues that post-hospital records also support continued limitation. (ECF No. 10, PageID.2612). But in support of this argument, as discussed more fully in the Court's order to show cause (ECF No. 14),[1] Plaintiff

---

[1] The Court has warned Plaintiff's attorney, Erin E. Rich, about her cavalier attitude with the facts and law three times. *See Brent H. v. Comm'r of Soc. Sec.*, No. 25-cv-12606, 2026 WL 984232, at *13 n.4 (E.D. Mich. Apr. 13, 2026); *Mason F. v. Comm'r of Soc. Sec.*, No. 25-cv-13485, 2026 WL 1470618, at *10 n.4 (E.D. Mich. May 26, 2026). At least one other judge in this District has also reprimanded Plaintiff's attorney for similar

misrepresents and falsifies the record.  First, Plaintiff cites to irrelevant records prior to the start of his alleged disability.  (ECF No. 10, PageID.2612).  He then states his provider found his speech to be notably off even though the provider actually said he did not notice his speech to be notably off at all.  (ECF No. 7-1, PageID.1005; ECF No. 10, PageID.2612; *see also id.* at PageID.2603, 2613 (repeating false factual statements)).  Plaintiff's next two sentences, while factually accurate, leave out important information showing that his numbness was mild and his brain MRI was back to normal except for stable changes related to aging.  (ECF No. 10, PageID.2612 (citing ECF No. 7-1, PageID.775, 778, 809–10)).  Plaintiff has since withdrawn these misrepresentations and no longer relies on them for his arguments.  (ECF No. 16, PageID.2666).

Plaintiff also argues that brief notations of normal exams do not necessarily establish that Plaintiff could remain on task throughout a workday after suffering from meningitis.  (ECF No. 10, PageID.2613).  Additionally, he argues the relevant question is whether he retains the capacity for full-time light work.  (*Id.* at PageID.2615).  But Plaintiff "bears the burden of showing that [he or] she requires

---

misconduct—luckily, in that case, not to the detriment of her client.  *See Tiffany K. v. Comm'r of Soc. Sec.*, No. 25-cv-10319, 2026 WL 127737, at *1 n.2 (E.D. Mich. Jan. 16, 2026).  Thus, the Court entered a separate order directing Erin Rich to show cause why her conduct has not violated Federal Rule of Civil Procedure 11(b) and why she should not be sanctioned.  (ECF No. 14).  After a response and a hearing, the Court ordered appropriate sanctions.  (ECF No. 17).

a more restrictive RFC." *Scott v. Saul*, No. 19-cv-13200, 2021 WL 1234598, at *6 (E.D. Mich. Feb. 16, 2021) (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)), *report and recommendation adopted*, 2021 WL 1212666 (E.D. Mich. Mar. 31, 2021).  Indeed, except for Plaintiff's false or misleading citations discussed above, he provides almost no evidence showing disability after his discharge from the hospital.  The record is almost exclusively full of reports of Plaintiff doing very well with a fantastic recovery following his hospitalization. Plaintiff notes that an ALJ cannot selectively parse the record or rely on isolated normal findings while ignoring evidence supporting greater limitations.  While this is true, it is Plaintiff, not the ALJ, who has cherry-picked from the record to support his arguments.  Plaintiff attempts to shift his burden to the Commissioner.  But it is his burden to show he requires a more restrictive RFC and he has not done so.

Plaintiff next argues that his hearing-related functioning needed to be more fully considered.  But the ALJ fully considered Plaintiff's complaints of ear infections and hearing loss:

> There is also some evidence of recurrent or chronic ear infections, but the claimant has failed to establish that this is a severe impairment.  The claimant has reported a history of recurrent ear infection[s] and he did receive treatment for a chronic ear infection over a period of several months in 2024.  However, it does not appear that the claimant has had an ear infection lasting at least 12 consecutive months since the alleged onset date, so this condition does not satisfy the regulatory duration requirement.  Even if it had, the claimant has not alleged and the record does not reflect any work-related limitations associated with his ear infection, so it would be a non-severe impairment resulting in no more

26

than minimal limitations on his ability to work.

> The record also indicates the claimant has some hearing loss, but he has failed to show that this is a severe impairment.  The claimant reported some issues with his hearing during primary care visits in January 2024, prompting a referral to a specialist for further evaluation.  The claimant thereafter met with the specialist and several audiograms over the next few months showed mixed hearing loss bilaterally.  However, the claimant has not pursued any interventions for his hearing loss to date and his word recognition scores were still 100% in each ear in his most recent audiogram.  Based on this file, the claimant has failed to established [sic] that his hearing loss has resulted in no more than minimal limits on his ability to work.

(ECF No. 7-1, PageID.43 (internal citations omitted)).  Plaintiff fails to explain or show how these non-severe impairments would, even in combination with his other impairments, require additional restrictions in his RFC.

Many of Plaintiff's arguments cite medical evidence that has already been weighed and considered by the ALJ.  This is an improper attempt to get the Court to reweigh the evidence.  But even if this Court were to come to a different conclusion, there is substantial evidence that supports the ALJ's RFC.  *See, e.g.*, *White v. Colvin*, No. 14-cv-12870, 2015 WL 5210243, at *12 (E.D. Mich. Sept. 3, 2015) ("Where, as here, the ALJ provided a narrative discussion of a claimant's symptoms, their effect on the claimant's work, and how he reached those conclusions, the ALJ's narrative substantially complied with the requirements of SSR 96-8p."); *Deweese v. Comm'r of Soc. Sec.*, No. 17-14081, 2018 WL 8244844, at *7 (E.D. Mich. Oct. 9, 2018), *report and recommendation adopted*, 2019 WL 1324238 (E.D. Mich. Mar. 25,

27

2019); *Taylor v. Comm'r of Soc. Sec.*, No. 25-cv-10068, 2026 WL 867499, at \*3 (E.D. Mich. Mar. 30, 2026).  Plaintiff has failed to show error in the ALJ's analysis.

### 2.      Subjective Testimony

Plaintiff argues the ALJ improperly relied on later reports from Plaintiff, medical exam findings, and daily activities, violating SSR 16-3p in rejecting Plaintiff's subjective complaints.  (ECF No. 10, PageID.2616).  During the hearing, Plaintiff complained of issues with numbness in his left arm and leg; standing, walking, balancing, or sitting for more than 20–25 minutes at a time; lifting more than 25 pounds; hearing; headaches affecting his concentration, focus, and short-term memory; and poor sleep necessitating 3–4 naps a day.   (ECF No.7-1, PageID.76–80).  Plaintiff's arguments and citations largely mirror those discussed above and will not be further discussed here.

According to SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and other factors.  SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  This analysis and the conclusions drawn from it—formerly termed a credibility determination—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 WL 1119029, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *6.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

(i)   [D]aily activities;
(ii)  The location, duration, frequency, and intensity of . . . pain;
(iii) Precipitating and aggravating factors;
(iv)  The type, dosage, effectiveness, and side effects of any medication . . . take[n] to alleviate . . . pain or other symptoms;
(v)   Treatment, other than medication, . . . received for relief of . . . pain . . . ;
(vi)  Any measures . . . used to relieve . . . pain; and

(vii)   Other factors . . . .

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility" as long as the assessment is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Saunders v. Kijakzi*, No. 20-cv-12210, 2022 WL 885838, at *3 (E.D. Mich. Mar. 25, 2022) ("'It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant'" (quoting *Rogers.*, 486 F.3d at 247)).

Claims of cherry-picking record evidence rarely succeed: "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (crediting argument of cherry picking requires court to reweigh record evidence). The Court may not reweigh evidence on appeal. *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. 2022).

In addition to his duplicative arguments, Plaintiff argues that the ALJ improperly dismissed complaints concerning concentration, memory, fatigue, and

30

sleep because they were not documented in his medical records. (ECF No. 10, PageID.2617). He argues the absence of complaints in records for follow-up medical care is not affirmative evidence that his post meningitis symptoms resolved. But when a claimant alleges symptoms so severe as to be disabling, "there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions." *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 846 (6th Cir. 2004); *see also Carlson v. Comm'r of Soc. Sec.*, No. 18-cv-13186, 2020 WL 1482504, at *5 (E.D. Mich. Mar. 27, 2020) (finding lack of treatment and denial of migraines to providers sufficient evidence).

Here, the ALJ did not rely exclusively on a lack of documentation. Instead, he relied on affirmative documentation showing Plaintiff had mild or no symptoms, the same symptoms that Plaintiff later testified were disabling. It is eminently reasonable to conclude that Plaintiff was recovering quickly and not disabled when he did not report lingering symptoms from his meningitis to either his primary care physician nor the hospital at follow-up visits. When asked, Plaintiff reported being back to normal except for his recall of some acquaintances' names. (ECF No. 7-1, PageID.915). This is sufficient evidence for the ALJ to rely on.

The Court's review of the ALJ's detailed decision, the medical records, and Plaintiff's arguments show that the ALJ properly considered the appropriate factors in weighing Plaintiff's statements of subjective symptoms. As such, Plaintiff has

not shown the ALJ erred nor that the ALJ's decision is unsupported by substantial evidence.

### 3.     New Evidence

Alternatively, Plaintiff argues the case should be remanded for the ALJ to consider new, material evidence.  (ECF No. 10, PageID.2618).   Plaintiff was admitted to the hospital on March 10, 2025, shortly after the hearing, complaining of shortness of breath and a cough.  (ECF No. 7-1, PageID.58).  He was found to be septic with pneumonia and had sinus tachycardia (faster than normal heartbeats).  (*Id.*).  He believed he developed the infection which developed into pneumonia from a daycare with lots of sick children.  (*Id.*).  He required intubation from March 12 through 21, 2025, and suffered a generalized seizure[2] while in the hospital.  (*Id.* at PageID.60, 66).  He was medically cleared and placed in inpatient rehab on March 28.  (*Id.* at PageID.60).  Plaintiff argues that although these records were ordered, the ALJ issued her decision before they could be submitted and the Court should therefore remand so they can be considered.  (ECF No. 10, PageID.2618–19).

"A remand under sentence six is warranted only where an applicant presents new and material evidence and there is a reasonable justification for failing to present the evidence to the ALJ."  *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 422

---

[2] Attorney Rich again misstates the record claiming Plaintiff suffered "numerous seizures." (*Compare* ECF No. 7-1, PageID.66, *with* ECF No. 10, PageID.2619).   Rich has acknowledged and withdrawn this falsity.  (ECF No. 16, PageID.2670–71).

(6th Cir. 2014) (citing *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)).  "Evidence is material only if there is a reasonable probability that it would have affected the outcome of the proceeding." *Id.*  The claimant has the burden of showing a remand is appropriate. *Ferguson*, 628 F.3d at 276.

Assuming for the sake of argument that Plaintiff's evidence was new and that he had good cause for not submitting it earlier, he has still failed to show it was material to the ALJ's decision.  Plaintiff argues the evidence is material because he was hospitalized directly after the hearing for the same "core issues" he had been dealing with throughout the period of alleged disability.  (ECF No. 10, PageID.2619).  Additionally, he argues "[t]his evidence strongly reinforces Plaintiff's position that his impairments remained severe, unstable, and incompatible with sustained light work.  It also directly undermines the decision's repeated suggestion that Plaintiff largely recovered and retained the capacity for competitive work with only modest postural limitations." (*Id.*).  The Court disagrees.

The limited evidence Plaintiff submitted regarding his most recent hospital stay shows complications from pneumonia. (ECF No. 7-1, PageID.55–67).  Plaintiff does not show how his meningitis and pneumonia are related other than generalized and conclusory assertions that they are from the same core issues.  The submitted evidence does not show that.  Instead, the evidence shows Plaintiff had meningitis in 2023 with complications which he quickly recovered from after being released

33

from the hospital.  At a daycare two years later, Plaintiff separately developed a discrete illness—pneumonia with complications.  But these illnesses are not related nor were any of Plaintiff's severe impairments complicated or exacerbated by his recent hospital stay.  Therefore, the evidence was not material in that there is not a reasonable probability that the ALJ would have reached a different disposition if she was presented with the new evidence.

## III.  ORDER

For these reasons, Plaintiff's motion (ECF No. 10) is **DENIED**, the Commissioner's motion (ECF No. 12) is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: July 14, 2026

S/PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

34